J-A11001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAJ AARON LESANE | : | No. 1876 MDA 2019 |

Appeal from the Order Entered November 1, 2019
In the Court of Common Pleas of Clinton County
Criminal Division at No(s):  CP-18-CR-0000253-2019

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, P.J.:          **FILED: JUNE 8, 2020**

The Commonwealth appeals from the order entered in the Clinton County Court of Common Pleas. The order granted Taj Aaron Lesane's motion to suppress evidence found during a search of his car after he was stopped for a violation of the Motor Vehicle Code. We reverse the suppression court's order and remand for further proceedings.

Pennsylvania State Troopers Andrew Adams and Dennis Twigg were traveling west bound, at night, on Interstate 80 when they noticed a black Dodge Challenger weaving and swerving within its lane of travel. The troopers decided to follow the vehicle because they suspected the driver was either under the influence or text messaging. Thereafter, they observed the Dodge Challenger cross over the fog line twice in violation of the Vehicle Code. The

_____

* Former Justice specially assigned to the Superior Court.

troopers planned to initiate a traffic stop, but waited three miles until Exit 173 due to safety concerns. There, they activated the emergency lights and effectuated a stop.

Trooper Adams and Trooper Twigg exited their cruiser and approached Lesane to ask for his license. As they did so, they noticed the smell of marijuana emanating from the driver and passenger sides of the vehicle. Based on this observation, the troopers conducted a search of the vehicle and discovered marijuana, heroin, methamphetamines, a digital scale, and two knives. The troopers arrested Lesane.

Lesane was charged with possession with intent to deliver, possession of marijuana, possession of drug paraphernalia, driving under suspension, failure to keep right, and disregarding traffic lanes.[1] He filed a pretrial motion to suppress all evidence related to the stop, arguing that police lacked probable cause to stop his vehicle. The suppression court held a hearing on the motion, and ultimately granted it. Thereafter, the Commonwealth filed a timely appeal challenging the order granting Lesane's suppression motion.

On appeal, the Commonwealth asserts that the suppression court erred in finding that Trooper Adams and Trooper Twigg lacked the requisite level of suspicion to stop Lesane. *See* Appellant's Brief, at 4. Specifically, the Commonwealth contends that the troopers had probable cause to stop Lesane

_____

[1] 35 P.S. § 780-113 (a)(30); 35 Pa.C.S.A. § 780-113(a)(31); 35 P.S. § 780-113(a)(32); 75 Pa.C.S.A. § 1543(a); 75 Pa.C.S.A. § 3301(a); and 75 Pa. C.S.A. § 3309(1).

for disregarding traffic lanes pursuant to 75 Pa. C.S.A. § 3309(1) of the Vehicle Code. ***See*** Appellant's Brief, at 10. However, even if probable cause did not exist, the Commonwealth argues that the troopers had reasonable suspicion to stop Lesane and investigate whether he was driving under the influence ("DUI") or texting while driving. ***See id***., at 4.

Our standard of review when the Commonwealth appeals from a suppression order is well settled. A reviewing court must consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the record as a whole. ***See Commonwealth v. Hemingway***, 192 A.3d 126, 129 (Pa. Super. 2018). Further, in reviewing a suppression ruling, we must ascertain whether the record supports the factual findings of the suppression court and then determine if the legal conclusions drawn therefrom are in error. ***See Commonwealth v. Dean***, 940 A.2d 514, 516 (Pa. Super. 2008).

We first address whether Trooper Adams and Trooper Twigg had reasonable suspicion to stop Lesane. If a police officer possesses reasonable suspicion that a violation of the Vehicle Code is occurring or has occurred, he may stop the vehicle involved for the purpose of obtaining information necessary to enforce the provisions of the Code. ***See*** 75 Pa. C.S.A. § 6308(b). Reasonable suspicion is a relatively low standard and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. ***See Commonwealth v. Brown***, 996 A.2d 473, 477 (Pa. 2010). Thus, in order to justify the stop, an officer must be able to point to

specific and articulable facts which led him to reasonably suspect a violation of the Vehicle Code. **See Commonwealth v. Holmes**, 14 A.3d 89, 95 (Pa. 2011). The standard for assessing whether a given set of observations constitutes reasonable suspicion is an objective one, based on the totality of the circumstances. **See id**.

In the present case, the suppression court found that the troopers did not have reasonable suspicion to believe Lesane was driving under the influence. **See** Trial Court Opinion, 11/01/2019, at 6. The court emphasized that there was no testimony offered as to whether either trooper had training and experience with DUI investigations. **See id**. Even more concerning to the court was that, after the second crossover, the troopers followed Lesane for an additional three miles and did not observe any motor vehicle infractions. **See id**. Furthermore, although the troopers' cruiser was equipped with a video recording device, the court noted that the video did not include footage of the alleged Vehicle Code violations. **See id**. As such, the court concluded that the troopers did not have reasonable suspicion to stop Lesane. **See id**.

Here, as discussed above, Trooper Adams and Trooper Twigg, after entering onto Interstate 80, noticed Lesane's vehicle weaving and swerving within its lane of travel. **See** N.T., Suppression Hearing, 10/22/19, at 22. As they followed Lesane, the troopers observed the passenger tires of Lesane's vehicle cross the fog line twice within the span of a mile. **See id**., at 7, 31. Because of his training and experience, which included DUI stops on the interstate, Trooper Adams suspected Lesane was driving impaired or on his

phone. **See id**., at 7. As a result, the troopers conducted a traffic stop to further investigate whether there was a violation of the Vehicle Code. **See id**., at 7.

Based on the foregoing, we conclude that Trooper Adams and Trooper Twigg had reasonable suspicion to stop Lesane and investigate whether he was driving under the influence or texting while driving. The fact that the troopers followed Lesane for an additional three miles and did not observe any other motor vehicle infractions is not fatal to this conclusion. Even a combination of innocent factors, when viewed together, may warrant further investigation by the police. **See Holmes**, 14 A.3d at 96.

Moreover, the suppression hearing transcript does not support any implicit finding that either trooper's testimony was not credible. In fact, the court found that Trooper Twigg observed Lesane's vehicle swerving within its lane of travel. **See** Trial Court Opinion, 11/1/19, at 2. Further, the court found that both troopers observed Lesane's vehicle cross the white fog line twice in about a mile of driving. **See id**. Finally, the court found that, based on these observations, the troopers decided to pull Lesane over to investigate whether Lesane was engaged in a violation of the vehicle code. **See id**.

The court was concerned with the paucity of evidence regarding the troopers' experience in investigating DUI. While we cannot fault the court for being troubled by this lack of evidence, we conclude that the testimony provided by the troopers was not expert in nature. Any reasonable person observing a car weaving within its lane, and then crossing the fog line within

one mile could reasonably suspect the driver was impaired or distracted. And reasonable suspicion was all that was required to initiate the stop and perform a further investigation.

Although the dash cam video failed to confirm the erratic driving, Trooper Adams, in his testimony, provided specific and articulable facts that led him to believe that an investigation might reveal a violation of the Vehicle Code. Once again, we note that the court, while highlighting the absence of evidence from the dash cam video, did not explicitly find the troopers' testimony incredible. Rather, a plain reading of the court's findings of fact reveals the court found the troopers credible regarding their observations. The court's analysis in support of suppression focuses on the legal conclusions that can be drawn from those observations.

We cannot agree with the suppression court that the troopers' observations were legally insufficient to support a finding of reasonable suspicion. This Court has held that reasonable suspicion of DUI is formed when a qualified officer observes a vehicle weaving and drifting over the fog line. *See Commonwealth v. Walls*, 206 A.3d 537, 543 (Pa. Super. 2019). Therefore, we conclude the troopers had reasonable suspicion to conduct an investigatory stop.

Because we conclude that the troopers had reasonable suspicion to stop Lesane, we need not address whether the stop was also valid based on probable cause of a § 3309(1) violation.

Consequently, we find the court erred by granting Lesane's motion to suppress. Accordingly, we reverse the suppression court's order.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2020